[Cite as *Slinger v. Phillips*, 2015-Ohio-357.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| JOSEPH SLINGER, et al. | C.A. No. 13CA0048-M |
| Appellants | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SCOTT PHILLIPS, et al. | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellees | CASE No. 11CIV0739 |

DECISION AND JOURNAL ENTRY

Dated: February 2, 2015

BELFANCE, Presiding Judge.

{¶1} Joseph Slinger and Brian Young (collectively, "Plaintiffs) appeal the award of summary judgment by the Medina Court of Common Pleas to Sergeant Scott Phillips, Lieutenant Matthew Linscott, Chief Deputy Kenneth Baca, and Sheriff Neil Hassinger (collectively, "Defendants"). For the reasons set forth below, we reverse.

I.

{¶2} At the time of the incidents at issue in this case, Plaintiffs worked as correctional officers at the Medina County Jail in the employ of the Medina County Sheriff's Office. Keith Waddle, an inmate of the jail, told officers that illegal drugs were being smuggled into the facility by Officer Young. Sergeant Phillips began investigating Officer Young and enlisted the help of the Medina County Drug Task Force. Jennifer Smith, an agent for the task force, began meeting with Officer Young and attempted to have him admit to wrong doing. The task force also placed a GPS tracer on Officer Young's vehicle to monitor his movements.

{¶3}   Mr. Waddle reported to Sergeant Phillips that he had recently bought some contraband in the jail, which he gave over to the sergeant. Mr. Waddle also told Sergeant Philips that he had heard a new shipment of drugs would be coming in on September 26, 2008, and would be brought in by Officer Slinger. Sergeant Phillips had a member of the Drug Task Force perform a "NIK" field test on the substance. The task-force agent told Sergeant Phillips that the test showed that the substance was likely cocaine. The substance was sent to the Bureau of Criminal Investigation and Identification for further analysis.

{¶4}   However, before receiving confirmation from BCI, the jail administrators planned a raid based upon Mr. Waddle's report that a new shipment would be arriving on September 26, 2008. The raid was planned to occur around the shift-change on the evening of September 26 because Officer Young and Officer Slinger would both be present at that time. A GPS device was also placed on Officer Slinger's vehicle to monitor his movements.

{¶5}   When the raid commenced, Plaintiffs were taken to separate rooms and were questioned for a number of hours about their connection to the illicit substances being brought into the jail. Following the raid, Lieutenant Linscott gathered the other correctional officers and spoke about the reasons for the raid. The raid uncovered no evidence of outside contraband, and the BCI test-results received a few days later indicated that the substance supplied by Mr. Waddle was not cocaine.[1]

{¶6}   Plaintiffs filed a complaint against Defendants, alleging false imprisonment, invasion of privacy, and slander. Defendants filed a motion for summary judgment, and

---

[1] It was later determined that Mr. Waddle had been purchasing prescription medications mixed with flavor packets for noodles from inmates who had not swallowed the medication provided by the jail.

Plaintiffs filed a motion in opposition. The trial court granted Defendants' motion for summary judgment.

{¶7} Plaintiffs have appealed, raising a single assignment of error for our consideration.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS BY GRANTING DEFENDANTS' MOTION FOR SUMMARY [JUDGMENT] AND DETERMINING THAT THERE WERE NO GENUINE ISSUES OF FACT AND THAT DEFENDANTS WERE ENTITLED TO JUDGMENT AS A MATTER OF LAW.

{¶8} Plaintiffs argue that the trial court erred when it awarded summary judgment to Defendants because the trial court impermissibly weighed the evidence in determining that there were no issues of material fact and, thus, the trial court violated the summary judgment standard set forth in Civ.R. 56(C).

{¶9} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8.

{¶10} Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 293, quoting Civ.R. 56(E).

{¶11} Based on our review of the judgment entry in this case, it appears that the trial court applied the wrong standard awarding summary judgment to the Defendants. The introduction section of the entry cites the correct standard: "* * * there are no genuine issues as to any material fact and * * * the defendants are entitled to judgment as a matter of law." However, the substance of the entry reveals that, instead of viewing the evidence in the light most favorable to the Plaintiffs as the non-moving party, the trial court weighed the evidence before it. *See Horner v. Elyria*, 9th Dist. Lorain No. 13CA010420, 2015-Ohio-47, ¶ 10 ("In ruling on a motion for summary judgment, a trial court may not weigh the evidence and determine issues of fact."). For example, under the trial court's "Findings of Fact and Conclusions of Law[,]" the court wrote, "The Plaintiffs claim Lt. Linscott defamed them when he observed that *if they were guilty* of a crime, they were 'pieces of [excrement].'" (Emphasis added.). This version of the statement was given by Lieutenant Linscott in his deposition. Correctional officers John Russell and Gary Zamancik testified to the contrary that Lieutenant Linscott did not speak in hypotheticals when talking about Plaintiffs.[2] Rather, they stated that

---

[2] We also note that the trial court mischaracterized the nature of Plaintiffs' defamation claim, insofar as it believed the claim was based upon the allegation that Lieutenant Linscott had referred to the officers as excrement. However, the record reflects that the defamation claim is based in large part upon the allegation that Lieutenant Linscott falsely stated that Plaintiffs had

Lieutenant Linscott told the assembled officers that the raid had been successful, that Plaintiffs were guilty, and that they were going to jail. The trial court in its findings of fact accepted Lieutenant Linscott's version without acknowledging that it was called into dispute by other competent evidence. Given the existence of testimony directly contradicting Lieutenant Linscott's claim that he spoke only in hypotheticals, we conclude that the trial court impermissibly weighed the evidence, rather than properly applying the summary judgment standard, which required it to construe the evidence most favorably to the nonmovants when determining whether there were material disputes of fact. *See id.*

{¶12} As in *Horner*, this case involves a complex set of facts and a myriad of claims. *See id.* at ¶ 12. Although the court set forth some of its reasoning for determining summary judgment was appropriate, "it appears that the very foundation of its opinion was improper, as the court did not apply the correct summary judgment standard." *Id.* "Were this Court to apply the correct summary judgment standard, this Court would essentially be sitting as the trial court rather than the reviewing court[,]" which would be improper under the circumstances. *Id.* at ¶ 13, citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992). Accordingly, we are compelled to reverse and remand for the trial court to apply the correct summary judgment standard in the first instance.

### III.

{¶13} In light of the foregoing, the judgment of the Medina County Court of Common Pleas is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

---

committed a crime of moral turpitude, indicating to the assembled officers that he had recovered heroin when such was not the case.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
EVE V. BELFANCE
FOR THE COURT

CARR, J.
MOORE, J.
CONCUR.


APPEARANCES:

ORVILLE L. REED, Attorney at Law, for Appellants.

FRANK H. SCIALDONE and CARA WRIGHT, Attorney at Law, for Appellees.